432 So.2d 588 (1983)
Mary B. MARTIN, Appellant,
v.
SCHOOL BOARD OF GADSDEN COUNTY, Appellee.
No. AH-190.
District Court of Appeal of Florida, First District.
May 17, 1983.
Pamela L. Cooper, Tallahassee, Gen. Counsel for FTP-NEA, for appellant.
James Harold Thompson and Claude B. Arrington of Thompson & Arrington, Quincy, for appellee.
John D. Carlson, Tallahassee, for Florida Ass'n of School Administrators, Inc.; Robert M. Rhodes and James C. Hauser of Messer, Rhodes & Vickers, Tallahassee, for The Florida School Boards Association, Inc., for amici curiae.
MILLS, Judge.
The appellant, a teacher in the Gadsden County School System, challenges an order denying her a Section 120.57, Florida Statutes (1981), hearing concerning her intrasystem transfer. We affirm.
The teacher's petition for a Section 120.57 hearing wholly fails to identify what substantial interest is affected. There is no allegation of harm done to the teacher by the transfer. No pecuniary harm was alleged. No damage to reputation was alleged, although argued in the briefs.
We do not decide whether damage to reputation would require a formal hearing, compare Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), (holding that damage to reputation alone does not trigger due process protections for purposes of 42 U.S.C. § 1983).
We are, in effect, asked to find that Administrative Procedures Act formal hearings are, as a matter of law, a part of a school system's personnel procedures. We will not do this.
Personnel decisions are necessarily judgment calls involving a multitude of factors. *589 If a superintendent in his or her discretion, supported by the School Board, decides that harmony between administration and faculty is best served by an intrasystem transfer, it is not this Court's job to second-guess them.
The dissent characterizes this opinion as a "sweeping" holding that personnel decisions are immune from Chapter 120 processes. Untrue.
We have merely adhered to the unquestioned premise that substantial interests must be affected to trigger Section 120.57 hearings. To avoid confusion as to the specific allegations in the petition for formal hearing, we have appended the petition to this opinion.
AFFIRMED.
JOANOS, J., concurs.
ERVIN, J., dissents with opinion.

APPENDIX

 BEFORE THE SCHOOL BOARD OF GADSDEN COUNTY
 Filed Nov. 9, 1982
 WILLIE RUTH WILLIAMS, MARY B. MARTIN :
 and GLADYS ROWE,
 :
 Petitioners,
 :
 - v -
 :
 SCHOOL BOARD OF GADSDEN COUNTY,
 :
 Respondents.
 :
 ______________________________________
 PETITION FOR FORMAL HEARING
 Pursuant to § 120.57(1), Florida Statutes and Rule 28-5.201,
F.A.C., the Petitioners in the above-styled matter hereby request
a formal hearing to determine the validity of the School Board
action taken on July 28, 1981. In support of the request, the
Petitioners state:
 1. The Petitioners are residents of Gadsden County and are
employed as classroom instructors in the Gadsden County School
System.
 2. At the specially scheduled Gadsden County School Board
meeting of July 15, 1981, the recommendations to transfer four
Gadsden County classroom teachers were presented to the Board.
The Petitioners, three of the four teachers in question, received
no prior notice of the impending action and, in fact, were not in
attendance at the meeting.
 3. Because of the absence of facts warranting such transfers
and the inability of the affected parties to present information
in their behalf, School Board member Harold Henderson requested a
deferral of the item until the next school board meeting.
 4. On July 28, 1981, the Superintendent called a special
meeting of the Gadsden County School Board, wherein the
involuntary transfers of the Petitioners was again addressed.
Without discussion, the School Board effectuated the transfers of
the Petitioners.
 5. Contrary to established district practice and the
requirements of § 120.53, § 120.54, § 230.17, Florida Statutes,
the School Board failed to publish notice of the special meeting
in the Gadsden County Times. Moreover, individual notice of the
meeting was not furnished to the affected Petitioners. As a
result, none of the Petitioners had an opportunity to attend the
meeting to question the efficacy of the transfers.
*590 6. As a result of the School Board action, the Petitioners will
be removed from their areas of experience and expertise. Not only
has Mrs. Williams taught advanced mathematics exclusively at the
high school level for a number of years, but moreover she has
developed a rapport with her students equalled by few teachers.
In addition, Mrs. Rowe has held her position as a basic
mathematics instructor for many years. Both teachers have served
effectively as active members of their respective faculties. By
placing Mrs. Williams in the position currently held by Mrs. Rowe
and by transferring Mrs. Rowe to Mrs. Williams' position, the
School Board will be disrupting established mathematics programs
in each school.
 7. The involuntary transfers of Petitioners Willie Ruth
Williams and Mary B. Martin are punitive and without
justification. The transfer of Mrs. Williams was precipitated by
allegations that she provided students with answers to the
student assessment test. However, these allegations are presently
before the Education Practices Commission (EPC). As of yet, the
EPC has not determined the legal sufficiency of the allegations
nor rendered any decision in this regard. Because Mrs. Williams
has vehemently and consistently asserted her innocence of the
charges, the School Board acted prematurely, without benefit of
the EPC recommendations and has penalized Mrs. Williams based
upon unproven allegations.
 In like manner, the involuntary transfer of Mary B. Martin was
initiated as a disciplinary measure. In a letter to
Superintendent Bishop, Mr. Charles Boyd, principal of George W.
Monroe Elementary School, indicated that "Mrs. Martin's actions
and attitudes have detrimentally affected the morale of the
faculty and staff." The statements were not factually
substantiated in this letter. Thus, without the benefit of a
hearing, Mrs. Martin will be denied the opportunity to challenge
the accuracy of such statements.
 WHEREFORE, the Petitioners hereby request advanced notice of
any further proceedings relating to the instant petition and a
formal hearing to address the concerns stated herein.
 Florida Teaching Profession-NEA
 Office of the General Counsel
 213 South Adams Street
 Tallahassee, Florida 32301
 By: /s/ Pamela L. Cooper
 PAMELA L. COOPER

ERVIN, Judge, dissenting.
In this appeal, the majority has in sweeping language accepted the school board's argument that its personnel decisions are immune from the Administrative Procedure Act (APA). It now holds that the board's determination to transfer a teacher on continuing contract to another school within the district is not one affecting her substantial interests.
The argument of the appellee board has a deceptive attractiveness: It states that because section 231.36(3)(e), Florida Statutes, permits the teacher to continue in her position or in a similar position within the district, she consequently has no legally recognized interest to teach at a particular school; accordingly, her substantial interests are not affected by the transfer. What is at issue, however, is not simply the statutory right of the board, upon the recommendation of the superintendent, to transfer one of its instructional personnel to another school within the district, but whether the decision to transfer, as alleged by Mrs. Martin, and denied by the board, was motivated by punitive considerations. Both parties have asserted conflicting reasons inducing the transfer, yet Mrs. Martin has been afforded no opportunity to contest the accuracy of the board's explanation.
In a letter addressed to the superintendent of the Gadsden County School Board, the principal, at the elementary school where Mrs. Martin taught, related that her "actions and attitudes have detrimentally affected the morale of the faculty and staff." He thereupon recommended that she be transferred to another school. Disagreeing with the recommendation, Mrs. Martin asked the superintendent to make an independent assessment of the situation. At a public meeting of the board, held for *591 the opportunity of discussing the transfers, but which afforded her no opportunity for an APA-type hearing, Mrs. Martin's principal reiterated his complaints, charging her with making intemperate and begrudging statements, and other acts which he termed to be a "violation of expected professional behavior." He had attempted, he said, to improve the situation by, among other things, offering "to wipe the slate clean and start over." His attempts, however, had been unsuccessful, so he felt he had no recourse other than to request her transfer. The offer "to wipe the slate clean" is, in the context of a decision to transfer a member of the instructional staff to another school, important because it reflects that the recommendation for the transfer involved an assessment, required by section 231.29, Florida Statutes, for, among other things, "the purpose of reviewing continuing contract." Section 231.29(2)(c). This assessment of the individual is placed in a file and is subject to inspection by certain authorized individuals. See section 231.29(3).
I therefore think that the record reasonably demonstrates the decision to transfer was based primarily upon an evaluation of her professional performance. Florida Administrative Code Rule 6B-4.05(5) provides that "[r]ecommendations for transfer should not be used as a means of continuing in service an incompetent person, nor shall transfer be used as a punitive measure." (e.s.) Punitive is defined as "inflicting, concerned with, or directed toward punishment." Webster's New World Dictionary (2d college ed. 1980).
Mrs. Martin's petition for a formal hearing alleged that the board's voluntary transfer was punitive and without justification, and it sought an opportunity to challenge the accuracy of the principal's statements indicating that her performance as a teacher was poor. If, then, the decision to transfer was the result of a punitive measure, it was an action forbidden by law. As there clearly appears to be a factual issue as to what prompted the transfer, it is difficult for me to conceive of any situation disentitling the teacher to an administrative hearing. We have many times recognized that if a dispute arises over whether an agency has followed the requirements of law, that the party affected by the noncompliance may be entitled to a hearing. For example, in Witgenstein v. School Board of Leon County, 347 So.2d 1069 (Fla. 1st DCA 1977), we held that if there exists a disputed issue of material fact as to whether certain teachers on annual contract had been appropriately assessed in accordance with the provisions of section 231.29, Florida Statutes, the board was required to hold a section 120.57(1) hearing to resolve the disagreement.
Section 231.29 requires district school superintendents to establish procedures for assessing the performance of all its instructional personnel. Although the record in the case below does not include any procedures or rules which may have been adopted in the Gadsden County School District requiring assessments, any policy established by the board should include, among other things:
(a) Observations and evaluations of classroom teaching
(b) Professional participation
(c) Adherence to ethical standards
(d) Evidence of the educator influence on student growth and achievement... .
Fla. Admin. Code Rule 6B-4.04(3).
I consider that the record fairly suggests that a controversy exists between the parties as to whether the transfer was influenced by impermissible considerations, considerations which did not properly take into account the assessment criteria mandated by section 231.29. Noncompliance with established procedure is a frequently cited basis for requiring a section 120.57 hearing.
Recently we required a school board to conduct an administrative hearing to determine whether the board's decision to transfer a district school employee from a supervisory position to a teaching position was a breach of his employment contract. Wahlquist v. School Board of Liberty County, 423 So.2d 471 (Fla. 1st DCA 1982). The opinions in both Witgenstein and Wahlquist thus reinforce the principle that agency decisions *592 that are arguably in violation of either law or contract must be subjected to a hearing because they impact upon the teachers' substantial interests. Compare Sterman v. Florida State University Board of Regents, 414 So.2d 1102 (Fla. 1st DCA 1982), wherein we held that a student's substantial interests were affected by a university's decision not to allow him to take a doctoral degree in a certain program, because the student had asserted the decision was not based on a subjective evaluation of his academic performance, but rather on an arbitrary determination.
Mrs. Martin should therefore be accorded a prompt hearing, to be held not only for the purpose of determining whether the board's decision to transfer was a punitive measure, but also for the opportunity of permitting her to remove from her file an assessment of her performance as a teacher that may have been the product of arbitrary or capricious considerations.